Williams, C. J.
The allegation of the answer, that The Brooks-Waterfield Company, by signing its name on the back of the note a'ssumed the position of an indorser, is an admission of the due execution of the note, and of the genuineness of the company’s signature thereon; but the nature of the obligation the company thus contracted, must be determined from the facts attending the • transaction, which, as shown by the record, are substantially, that the name of the company was signed on the back of the note when it was delivered to the plaintiff, and it was purchased and received by her from the maker on the day of its date, without information of any agreement concerning the company’s obligation, other than that derived from the note itself. The note being payable to the order of the maker, was incomplete in its execution until indorsed by him and delivered *605 to another for value; and it was so indorsed when, received by the plaintiff, who paid the maker its full value. The execution of the note being thus completed, then, for the first time became a valid obligation, and in legal effect was payable to the plaintiff or bearer. At that time it bore the signature of the company written on its back. There is here no room for any inference that the note had been previously transferred by the maker to the company, and thereafter indorsed by it' in order to transfer the title. If the company had thus become the indorsee, the note, in due course of business, could only have found its way back into the hands of the maker upon its surrender on payment or other satisfactory discharge, and its indorsement by the company on such surrender would be so entirely out of the usual course of business as to raise a presumption against it. The note being found in the hands of Cox on the day of its date with the company’s name indorsed upon it, is inconsistent with the theory that it had been indorsed and transferred to the company as the owner of the note, or that it had been taken up by payment. A more reasonable inference would be, that the note was then in the maker’s hands with authority from the company to negotiate it for his accommodation. “If a holder produce a note having a blank indorsement of one not the payee, the presumption is that it was made at the inception of the instrument.” Good v. Martin, 95 U. S., 90. So that, upon presentation of this note to the plaintiff, she was authorized to deal with it as belonging to Cox, with the signature of the company indorsed thereon at the time of its execution in order to give it credit and aid in its negotiation; she not hav *606 ing been informed of any different agreement or understanding between the parties.
Precisely what is the nature of the legal obligation contracted by a stranger who indorses his name in blank on the back of a negotiable promissory note before or at the time it takes effect, is a question upon which the courts have widely differed; some holding that his obligation is that of a second indorser; others have held him liable as a guarantor; and still others as a maker with the rights of a surety. The rule established in this state is, that when the name of such third party appears upon the note at the time it takes effect, his undertaking rests upon the consideration which supports the note, and the presumption is he intended to be liable as surety for its payment, and is held accordingly, unless he can show that there was a different agreement or' understanding between the parties, which it is competent for him to do. Bright v. Carpenter, 9 Ohio, 139; Champion v. Griffith, 13 Ohio, 228; Robinson v. Abell, 17 Ohio, 36; Seymour v. Leyman, 10 Ohio St., 284; 15 Ohio St., 515; Castle v. Biddy, 44 Ohio St., 449. And it is said in Randolph on Commercial Paper, section 831, that: “The view which finds most support is probably that which holds the indorsement of a negotiable note by a stranger before or at the time of its delivery to the payee to be prima facie an original undertaking as joint maker with an implied liability as such to the payee and all holders for value.” The present case must be governed by this rule, unless it is rendered inapplicable by the fact that the note in suit -is payable to the order of the maker and his name appears indorsed thereon above that of the defendant in error. There are cases in which that dis *607 tinction is made. Bigelow v. Collins, 13 Gray, 309; Dubois v. Mason, 127 Mass., 37; Bank v Payne, 111 Mo., 291; Bank v. Nordegen, 157 Ill., 663. These decisions are placed upon the grounds, that the nature of the liability of the parties whose names appear on the back of a negotiable note is conclusively determined by the position of the signatures with reference to those of the other parties when the note takes effect, and, that as a note payable to the maker’s order cannot take effect until indorsed by him, a third person in placing his name on the back of the note previous to its indorsement by the maker, intends to become liable only as a second indorser; he understands that to be the nature of his liability, it is said, and a different intention or agreement cannot be shown by parol proof. In one of the cases, Bank v. Nordgen, supra, the reason of the decision is stated as follows: “Inasmuch as the note can never have validity until the name of the payee appears upon it as an indorser the person writing his name in blank upon the noté understands that when the note takes effect his name will appear upon it as a second indorser, and it is reasonable to conclude that such was the position which he intended to occupy. ” The real foundation on which these decisions appear to rest is, that the maker by placing his name on the back of the note to give it effect becomes the first indorser, and the third person who places his signature on it, though done before that of the maker is indorsed on it, contracts the obligation of a second indorser. It is undoubtedly true that such a note is without any validity so long as it remains in the hands of the maker, and its indorsement and transfer by him to a holder for value is necessary to give it obligatory effect. *608 But it is equally true that by indorsing his name on the back ■ of the note and delivering it in that form to the holder, the maker does not become an indorser in the commercial acceptation of that term. He is nevertheless the maker of the note, his signature on its back being an essential part of its execution, and his liability continues to be that of . a maker only. He does not thereby enter into the contract of an indorser, which is to pay the note if the maker upon demand fail to do so at maturity, and due notice thereof be given. It would be • a useless ceremony, if not a palpable absurdity, to require the holder to make demand of the maker and give him notice of his own default, in order to charge him with the payment of the note. He is liable as maker, without demand and notice, and sustains no other legal relation to the paper; which relation, it must be presumed, is within the knowledge of third persons who place their names on the note while in the maker’s hands. It is no less true that such third person whose name appears on the back of a note of that kind before or at the time its execution is completed by the indorsement of the maker’s name thereon, is not an indorser in the proper and legal sense of the term. There is a popular sense in which the term is used that is sufficiently comprehensive to include "any person who lends his name in any form to another on commercial paper. But courts do not use it in that sense. In its well understood legal and commercial meaning, the indorsement of a note in blank amounts to a contx-act on the part of •the indorser with and in favor of the indorsee and every subsequent holder to whom the xxote is ■transferred, that the indorser had a good title to the instrument at the time of its indorsement, *609 and was competent to transfer that title, which he undertook to do by the indorsement and delivery of the instrument to his indorsee; so that, to give rise to the contract and relation of an indorser, it is necessary that he should have been the payee or' indorsee of the paper. Beckweth v. Angel, 6 Conn., 317; Story on Prom. Notes, section 135. Hence, neither the indorsement of the maker’s name on the back of a note payable to his own order to complete its execution, nor that of a third ■person in blank before or at the time of its execution and delivery, constitutes a regular indorsement of commercial paper, nor creates the contract arising from a reguiar indorsement in blank, the terms of which are distinctly defined by law, • and are therefore not subject to be varied by parol; the indorsement of thé third person, in such case, ’ belongs to tnat class known as irregular pr anomalous indorsements, whose obligation' depends upon the agreement of the parties, and being ambiguous in that respect, parol evidence becomes admissible to show the terms of the agreement’ as actually made by the parties, or other facts showing their intention at the time.
The assumption that the stranger who places his name in blank on the back of a negotiable note payable to the order of the maker intends to contract as a second indorser, is based upon the supposition that he knows the note cannot become effectual without the indorsement thereon of the maker’s name. But, he must also know the latter does not become the first indorser, nor contract the liability of an indorser at all; and, that his own signature placed on thev note before or at the time of its delivery creates no such contract; and since he does not thereby con *610 tract the liability of a regular indorser, the presumption that he did not intend to do so would be quite as reasonable and legitimate, as that he intended to do what he knew his act would not accomplish. It is not doubted that such third person may, by proper stipulation prescribe the extent of the liability he intends to incur by his indorsement, and make it that of a second indorser, or whatever else he chooses; but in the absence of such stipulation, the nature of his undertaking, like that of other irregular indorsers must be determined from the circumstances of the case. That neither the order in which the names appear on the back of the .paper, nor the order in point of time in which they were placed there, is conclusive of the relation of the parties to the paper, or to each other, or of the liability incurred where the paper is for the accommodation of the maker, was held in the early case of Douglas v. Waddle, 1 Ohio, 413, and in the late case of Castle v. Rickly, 44 Ohio St., 490. In the first case, a note drawn by Barnes, payable to the order of Waddle, was indorsed by Waddle, and afterwards by Douglass, and then discounted for the maker’s benefit. Douglass paid half of the note after maturity, and sued Waddle for reimbursement, claiming that as second indorser he had recourse on Waddle the first indorser, and that parol evidence was inadmissible to show any different relation between the parties. But the court sustained Waddle in his claim that, as the indorsements were made before the discount of the paper, to give it credit, for the maker’s accommodation, the obligation of Waddle and Douglass was that of co-sureties for the maker, and therefore, Douglass having paid no more than his share of the debt, was not entitled to *611 recover against Waddle. The court said that: “When a note is indorsed and transferred by a payee, the indorsement is an actual contract between the indorser and indorsee of the note, that the latter received it for a consideration paid, and therefore the indorsement, like the making, is evidence of a debt due from the indorser to the indorsee, and the former is bound to pay if the maker,upon demand, fails to do so, and the requisite notice is given the indorser. But when the transaction between the parties is different, when it is a mere accommodation transaction, neither the reason of the rule nor the justice of the case admits of its application.” And the court further said that: “Douglass knew that Waddle did not in fact own the note, but had indorsed it for the accommodation of Barnes, as surety. He knew that he himself indorsed it for the same purpose, and not as owner; it was intended to pay a debt due from Barnes who, and not Waddle, was the person benefited. Douglass himself never had a beneficial interest in the note, and the money paid by him was paid for Barnes.” So, it may be said in this case, the defendant in error must have known when it placed its name on the back of the note in suit, while in the hands of Cox, that its indorsement by him could have no other effect than to complete its execution, and that he would not thereby become a regular indorser of the paper, and that the defendant in error was not the owner of the note, nor had any beneficial interest in it, and therefore could not, and did not, become a regular indorser, but that the effect of its signature on the note was to give it credit, and enable Cox to negotiate it for his benefit. Speaking of irregular indorsements of this charac *612 ter, and of the understanding of parties to them, the court, in Douglass v. Waddle, supra, said: “In this country the parties to this description of paper have usually understood their relation to be that of principal and surety, and upon this understanding have generally acted both in creating the paper and adjusting their liabilities upon it. ” And in Randolph on Commercial Paper, section 888, that author says: “That in a great majority of instances the purpose of all the original parties to such irregular indorsements was to furnish additional security by way of guarantor or surety to the actual or nominal payee.”
That the defendant in error intended and understood its liability to be that of a surety, and not of a second indorser, is manifest from its subsequent conduct. The payment of $500.00 on the note by the defendant in error was made long after the maturity of the note, and after the failure to make the demand and give the notice necessary to charge the company as an indorser. It then was aware that, if its liability originally was that of an indorser only, that liability had then ceased; and it was under no obligation to make any payment to the plaintiff. It is not to be supposed that the cheek was given the plaintiff as a gratuity; the evidence shows that it was a payment on the note, which is a recognition of the validity of the ! demand. The payment, therefore, is at variance i with the claim that the liability of the company I was conditional, dependent upon proper demand I and notice, and amounts to an -unequivocal [acknowledgment of an absolute and unconditional liability at the time of the payment. And this construction by the defendant in error of its obligation is in harmony with what we have considered *613 it to be, both on principle and in view of the former adjudications of this court, that of a surety for the payment of the note. This conclusion has not been reached without a careful consideration of the cases which hold otherwise. But we have found ourselves unable to concur in their holdings, reluctant as we are to differ with the courts by which they were decided, and desirable as it is that there should be uniformity of decision on so important a question of commercial law.

Judgment reversed.